### Eben N. Willcox v. Leander L. Hill and others.

In a contest between two mortgagees as to the priority of their respective liens, the mortgagor being personally liable for both the mortgage debts, is disinterested, and might be a witness under Chancery Rule 55 prior to the act of 1861, making parties to suits competent witnesses generally.

Notice of a prior incumbrance to charge a subsequent incumbrancer or purchaser need not come from a party in interest.

Such notice of prior rights or equities as men usually act upon in the ordinary affairs of life, is all that can be required to charge a purchaser. If it is sufficient to direct the attention of the purchaser to such prior rights or equities, and to enable him to ascertain their nature by inquiry, he should be held bound by it.

Appeal in chancery from Genesee Circuit. The facts appear by the opinion.

*D. B. Duffield,* for complainant.

*L. Walker,* and *Newberry & Pond,* for defendants.

CHRISTIANCY J.:

The bill in this case was filed September 24th, 1859, to foreclose a mortgage executed by defendants, Hill and wife and Blackmar and wife, to Enos Goodrich and Reuben Goodrich, on the undivided half of a steam saw mill and lot, dated April 1st, 1857, for fifteen hundred dollars, payable in three equal annual instalments, with interest annually. The mortgaged premises were conveyed to the mortgagors by the mortgagees for the price of three thousand dollars, of which fifteen hundred dollars were paid down and the mortgage given for the balance. The mortgage was not acknowledged by all the mortgagors till the 25th September, 1857, and was not recorded till the 20th day of January, 1858. On the 22d day of October, 1857, the mortgage, with the bond accompanying the same, was assigned by the Goodriches to the complainant as trustee for their creditors, and in payment of their debts to the full amount of the face of the mortgage; they guaranteeing its payment.

On the sixteenth day of November, 1857 — after this assignment, but before this or the mortgage had been recorded—Hill and Blackmar executed a second mortgage on the same premises to the defendants, Widdifield & Cohu, merchants in the city of New York, to secure the payment of six hundred and fifty-two dollars (for which Hill & Blackmar, as partners, were indebted to them for goods), payable one-half in six, and the other half in nine months from the date of the mortgage. This mortgage contains a covenant against incumbrances, and of warranty, and was duly recorded on the day of its date.

The bill makes Widdifield & Cohu defendants as subsequent incumbrancers, and charges them with full notice

of complainant's prior mortgage at the time their mortgage was taken. Widdifield & Cohu, by their answer, which is without oath (the oath being waived), set up their mortgage, rely upon its prior registry, and deny that they had any notice of complainant's mortgage before or at the time their mortgage was taken, but aver that it was taken in good faith, and for valuable consideration, &c. They also allege a foreclosure of their mortgage in chancery, by bill filed July, 1858, to which Hill & Blackmar and the two Goodriches were made parties defendants, and against whom the bill was taken as confessed; that a decree of foreclosure and sale was obtained, and that the mortgaged premises were sold on this decree September 24, 1859 (which was the same day the bill in this cause was filed), and bid in by Widdifield & Cohu, for seven hundred and ninety - eight 31-100 dollars, the amount of the mortgage debt and costs, and that the sale had been duly confirmed, and the commissioner's deed executed and delivered to them. The complainant was not made a party to this foreclosure, though the assignment to him was duly recorded. The facts of the foreclosure and sale as above set forth are admitted by stipulation.

The defendants Hill & Blackmar, make no defense to the present bill, which, as to them, is taken as confessed.

From this statement of the case, it is clear that the main question is, whether the defendants, Widdifield & Cohu, had, prior to, or at the time of taking their mortgage, actual notice of the prior mortgage to Enos and Reuben Goodrich: since, if they had such notice, it would be a fraud on their part to endeavor to obtain a preference over the Goodrich mortgage by getting their own first upon the record.

The mortgage of Widdifield & Cohu was obtained through the agency of one Harvey Strong, a resident of Lima, Indiana, a collector for New York merchants, who was employed by Widdifield & Cohu, to collect or secure

the debt, and who for that purpose called upon the defendants Hill & Blackmar, at their place of business in Richfield, Genesee county, Michigan.

Strong was sworn as a witness for Widdifield & Cohu, and positively denies having received any notice whatever of the Goodrich mortgage, or any other mortgage on the premises; states that the day before his second visit to Richfield on this business (for he made two visits for the purpose at an interval of some ten days), and only two days before the mortgage was executed, he examined the records of deeds at the Register's office in Flint, with the assistance of the Register, and found no deed to Hill & Blackmar of the mill property, and was informed by the Register that there was no mortgage from them on the records; states that when he called on Hill & Blackmar two days after, and they proposed to give him a mortgage on the property, he told them of his examination and the result, and they then showed him the deed of the undivided half of the mill property from Enos & Reuben Goodrich, which had not been recorded, and which he told them ought to be recorded, to which they replied he could take it then and have it recorded; that he said to them he presumed they had not incumbered the property, and they assured him they had not.

On the part of complainant, we have the testimony of three witnesses, Hill & Blackmar, two of the defendants, and that of Jacob King, the justice before whom the mortgage to Widdifield & Cohu was acknowledged, all of whom testify directly and positively that they severally notified Strong of the mortgage to the Goodriches before that to Widdifield & Cohu was drawn.

Blackmar testifies that before the mortgage was executed, or agreed upon, he fully explained to Strong that they had purchased the property of the Goodriches for three thousand dollars, of which they had paid down fifteen hundred dollars, and given a mortgage for the same

amount, to which the property was still subject; says he gave him this information three or four days before the mortgage was executed, and that Strong then said the property was good for nothing as security.

Hill says that at the first visit of Strong, some two weeks before the mortgage was given, he told Strong they had given the Goodriches a mortgage on this property for one-half the purchase money; that Strong then refused to take the second mortgage, and went away without it; that after he came back he concluded, after a long time, to take it.

King, the Justice who took the acknowledgment, testifies, that on the same day the mortgage was executed, and about an hour before, Strong came to his house and said he wanted a blank mortgage; that Hill & Blackmar were to give him a mortgage on a steam saw mill they pretended to own, at the same time asking the witness what he considered it worth; that witness, having the blank mortgage in his hand, replied that he would not give the blank for the mortgage after it was executed. Strong asked why? And witness told him the Goodriches held a mortgage on the same property for purchase money, which was more than he considered the property worth; and he thinks told him the amount was two thousand dollars; to which Strong replied, " Well, it is the best I can do."

The testimony was taken prior to the act of March 11th, 1861, (Session Laws of 1861, p. 168), allowing parties to be witnesses generally, and Hill & Blackmar were examined under an order of the Court, made in pursuance of Rule Fifty-five of the Circuit Courts in Chancery, upon affidavit stating that they were not interested in the matters to which their testimony was sought; and the order only authorized their examination upon matters in which they were not interested. After the order, but prior to their examination, a release was executed to them by the com⁻

WILLCOX v. HILL.

plainant. But it was objected by the counsel for Widdifield & Cohu — and the same objection is urged here — that they were interested at the time of the order for their examination, and when the affidavit was made upon which the order was obtained, and that their examination was therefore not authorized by the fifty-fifth rule. Whether this be the fair construction of the rule (which was merely declaratory of the practice previously existing) we are not called upon to decide; as we are entirely satisfied that, at the time the order was made, they were not interested— within the meaning of the rule—in the matters to which their examination was subsequently had—the fact of notice— which could only affect the question of preference between the two mortgages. Hill & Blackmar admitted the validity of both, made no defense, and allowed the bill to be taken as confessed, as they had done with respect to that of Widdifield & Cohu.

If the complainant should succeed in the present case, they would be liable over to Widdifield & Cohu, on their covenants, in the amount of their debt, and the Court might, in their discretion, give the complainants costs against them, and they might also in a suit upon their covenants be liable to the costs of this suit. Should Widdifield & Cohu succeed, they would remain liable to complainant for the amount of his mortgage debt,. but could not well be held to pay costs of complainant in this cause, as it was no fault of theirs that the mortgage was not recorded in time.

In the absence of all testimony as to any change in the value of the property, the Court can not presume that the property, if again offered on complainant's mortgage would sell for more or less than when sold at public auction on that of Widdifield & Cohu. If interested at all, therefore, it was only in the question of costs; and so far as this interest went, it would be against the complainant in whose behalf they swore. But the costs do not

follow as matter of course in a suit in equity, as in a case at law, but are entirely in the discretion of the Court: — *Comp. L.* § 5596; and we do not think this contingent liability to costs can be recognized as an interest which would disqualify them under this rule.

The credit to which the respective witnesses should be entitled is another question. Strong, who positively denies all notice, purports to state all the accompanying circumstances with more detail and much greater particularity than the other witnesses, who do not profess to remember these collateral matters with the same precision. He is evidently a man of more general intelligence, and more thoroughly acquainted with business. He was a collecting agent for New York merchants, and would appear to be a competent and shrewd business man. But the desire such an agent would naturally feel, not only to promote the interest of his employers, but to give them a favorable impression of the value of his services, and to keep up the reputation of a shrewd and efficient collecting agent, is a consideration not to be overlooked in weighing conflicting testimony. It often has quite as much influence as a direct pecuniary interest.

On the other hand, we can not place implicit reliance upon the testimony of Blackmar, who, though very positive as to the fact of notice, seems to have a very imperfect recollection of the circumstances of the transaction, as to many of which we are satisfied he is mistaken. His testimony bears evident marks of a heedless mind, not habitually accurate either in observing or relating events. But with the exception of the fact of notice there is a general and substantial agreement between Hill and King, on the one side, and Strong on the other, in their statement of the main features of the transaction, and most of the circumstances: and we are at a loss to discover from the evidence any motive on the part of Hill & King—or even of Blackmar —for the fabrication of so important a fact as that of the

notice to which they testify; and there certainly is no ground for suspecting concert between them, as each testifies to a separate and distinct notice, not given in the presence of the other. It would lead us into too great prolixity to discuss all the various considerations bearing upon the question of the credibility of the several witnesses. But after a careful examination, we are all satisfied that Widdifield & Cohu, through Strong, their agent, had actual notice of the prior mortgage at the time their mortgage was taken. But it is objected that the notice testified to by King, if true, was not sufficient to avoid the effect of the prior registry — that to have this effect the notice should come from a party in interest. There are some cases which sustain this view; and it is said to be well settled in England. See *Barnhart v. Greenshields*, 28 *Eng. L. & Eq.* 77. But we do not think this rule can be sustained upon any sound principle as one of universal application. Loose neighborhood reports, it is true, should be entirely disregarded: and when the notice comes from a person not a party in interest, it should doubtless be required to be more positive and specific. See *Leading Cas. in Eq.* vol 2 *pt.* 1 (*note of Hare & Wallace*), 111 to 117. The circumstances under which it is given, and the previou knowledge of the person receiving it of certain facts in the title, may also have more or less bearing. Strong knew before the conversation with King, that Hill & Blackmar derived their title from Goodrich, by an unrecorded deed· We think the notice he received from King, if it stood alone, was sufficient to put an honest and prudent man upon inquiry. It is *notice*, not *knowledge*, which is required; and it can only be required to be such as men usually act upon in the ordinary affairs of life: — *Curtis v. Mundy*, 3 *Metc.* 405: and whatever is sufficient to direct the attention of a purchaser to the prior rights or equities of third persons, and to enable him to ascertain their nature by

inquiry, should be held sufficient: *Lead. Cas. in Eq. ub. sup. p.* 116.

The decree of the Court below must be affirmed, with costs to the complainant, and the cause must be remanded to the Court below for further proceedings.

The other Justices concurred.