John Torrent v. The Muskegon Booming Company.

*Bill in equity : Lessee in possession : Injunction to prevent irreparable mischief.* A bill in equity is not the appropriate remedy to obtain possession of premises from a tenant holding over after the expiration of a lease; nor to try the title to premises which such a tenant sets up to maintain his possession after such expiration : And though a court of equity might, in aid of proceedings at law to recover possession, and in a proper case, restrain, by injunction, such a tenant from committing irreparable mischief pending the proceedings; yet, it will not take original jurisdiction for such a purpose.

*Heard January 9. Decided April 5.*

Appeal in Chancery from Muskegon Circuit.

*E. S. Smith,* for complainant.

*D. Darwin Hughes,* for defendant.

CHRISTIANCY, J.

This case was heard in the Circuit Court for the County of Muskegon in Chancery, upon demurrer to the bill. That court, holding the demurrer well taken, dismissed the bill with costs; and from this decree the complainant appeals to this court.

The question therefore is, whether the bill states a case which entitles the complainant to equitable relief.

The bill, though sufficiently long, is not so clear and logical in its statements as it might have been, nor, when carefully analyzed, does it make so formidable a case, as from its magnitude and the nature of some of the grievances complained of, might, at first sight, be apprehended.

Stripped of all extraneous matters, and disregarding its numerous repetitions of matters, which are not rendered more efficacious by being repeated, it will, upon careful analysis, be found to set forth, substantially, the following facts only:

That on the first day of June, 1869, one Theodore Newell was the owner in fee (and in possession) of certain lands, purchased by him of the United States, fronting on the Muskegon River, and extending also under the waters of said river to the center thereof; that, having previously platted the uplands (or lands not covered by water) into village lots or blocks (as part of the village of Muskegon), and having leased, by verbal lease, to the defendant company,—which was engaged in the business of running, rafting, assorting, and delivering logs to mill-owners along said river,—the portion of said premises covered by water, including, perhaps (for the bill is not clear upon this), a small portion of the adjoining bank, under which the defendants entered and occupied, which lease was to expire on the last day of March, 1870, he, said Newell, on the first day of June aforesaid, sold and, together with his wife, conveyed to complainant, for the sum of twenty-six thousand dollars, among other portions of said lands, twenty-three lots fronting on said river, and extending, subject to the public right of navigation, under the water to the center of said river. That complainant's purchase was made subject to said lease, the defendant occupying the leased premises for the purposes mentioned, and complainant, as assignee of Newell, being entitled to the rents; that the portion of the purchased premises so leased to the defendant (consisting mostly, if not entirely, of the lands so covered by water), owing to the rights and facilities of floating and storing logs, etc., constituted the largest portion, in value, of complainant's purchase, and that he purchased said lands and water rights for his special use in lumbering and manufacturing lumber at his mill, for which use said land under water and water rights were of great value, and of but little value for any other purpose; that complainant, at the date of his purchase, went into possession of all the lands so purchased, except the portion so

leased to defendant, and that he became entitled to the latter portion as soon as such lease should expire, and duly notified defendant, prior to its expiration, that he should want possession of the leased premises on the expiration of the lease; that complainant is, and for three years has been, engaged in the lumbering business on said river, and now has a steam saw-mill situate on the lands so purchased, costing more than twenty thousand dollars; that to carry on the business of manufacturing lumber it is necessary to have the free use of said leased premises covered by water, at and near the bank of the river; that said mill is capable of cutting from eight to ten millions of feet of lumber per season; that complainant now has in, and being put in the river, to be floated from points above, down to said lands, then to be sorted, rafted, and delivered at said mill, ten millions feet of logs, and that without having the use of said leased premises (covered by water), for the purposes aforesaid, he will be unable to prosecute his said business, and to control said logs as they come down, and they will pass into the lake and be lost, to the great and irreparable damage of complainant; that defendant holds over, after the expiration of its lease, and refuses to yield up possession of said leased premises;—for this is the only fair result to be deduced from all the numerous and somewhat contra-dictory allegations in reference to the possession of the complainant and that of the defendant,—the plaintiff's right of possession, according to his own showing, not accruing until the first day of April, and on that day the bill shows the defendant in possession, at least, of a large part of the leased premises, constructing booms, driving piles, and pre-paring for the prosecution of their business, and this bill was filed three days after, on the fourth day of April. It alleges that complainant went into possession on the first of April, clearly implying of a part only, but of what part

of the leased premises does not appear, and commenced preparing the same for his use, and is engaged in erecting booms, log pockets and fixtures for that purpose; but the portion so taken possession of by complainant, or that in the possession or occupancy of the defendant, is not described.

The bill alleges that defendant is engaged in driving piles, constructing booms, log pockets, etc., in defiance of complainant's rights, and thereby entirely cuts complainant off from said river for a space of more than fifty rods, and thereby subjects him to great damage and irreparable injury, and that he is unable to prosecute said business on his own land in consequence of said acts of defendant; avers that defendant sets up and pretends to have a claim and title to said land covered with water, as against complainant, and claims the right of exclusive possession thereof, as far as low-water mark on the shore, subject only to the public right of navigation; and pretends that the title of complainant thereto is illegal and unfounded, and pretends to own land on the opposite banks of the river, and that as incident thereto, defendant owns the lands under the water, and that this ownership extends to and includes a part of the premises so formerly leased; negatives these pretenses, asserts complainant's rights to the land under water, from the banks to the center of the river, measuring from bank to bank; alleges that defendant, by its charter of incorporation of February 4, 1864, has no right or privileges upon the waters of Muskegon River covering complainant's land, without his consent, and that defendant has not complied with the conditions of its charter.

These are all the substantial facts upon which the claim to relief is based.

The relief prayed is that defendant may be decreed to renounce forever, and release to complainant, all claim and pretense of claim to said lands; that complainant's title to said land may be decreed free from the cloud created by

such claims set up by defendant; that defendant may be decreed to refrain from using or attempting to use said lands covered by water for the carrying on of the business of the defendant, and from entering upon said land and erecting booms and log pockets, driving piles, etc., or doing any other act thereon, except simply navigating the waters of said river, passing and repassing in common with the public, and for general relief, and prays for an injunction to restrain defendant from doing any such acts.

Taking all the facts stated in the bill as true, we think complainant has shown a case in which he has a clear and perfect remedy at law. So far as relates to all questions of right to be tried between the parties, it is but the ordinary case of a tenant holding over after the expiration of his lease; and no reason is shown why complainant cannot at once avail himself of the summary remedy given by the statute to oust the defendant and to obtain restitution of the premises, or why he cannot resort to an action of ejectment.

If he had commenced proceedings at law to regain the possession, it is possible—though upon this point we express no opinion—that the facts stated in the bill in reference to the defendant's acts in driving piles and erecting works upon the property, interfering with complainant's business and the use of his property, might have justified complainant in an appeal to the auxiliary jurisdiction of equity, by a proper bill, to restrain such acts and to preserve the property in its present condition, during the pendency of such proceedings at law, and until the rights of the parties should be decided.

But this bill is an appeal to the original jurisdiction of the court, and seeks to have the rights and titles of the parties tried in the court of equity, and asks an injunction on that basis only, as incident to the trial of the matters in controversy and the relief asked. See *Blackwood*

*v. Van Vleet, 11 Mich., 256.* It is therefore but an attempt to substitute a bill in equity for a summary proceeding under the statute, in the nature of a forcible entry, or an action of ejectment.

The bill cannot be maintained on the ground of removing a cloud upon the title, for the reason, first, that it states no title or pretended title which would be apparently good at law without evidence *aliunde.* It states nothing but a naked pretense of title, and therefore no reason for applying to a court of equity to get rid of it on the ground of any apprehended injury from it.—*Ward v. Dewey, 16. N. Y., 522; Crooke v. Andrews, 40 N. Y., 549 ; Palmer v. Rich, 12 Mich., 414; Scofield v. City of Lansing, 17 Mich., 437;* and, secondly, because the bill not only fails to show that complainant was in possession of the portion in controversy, but it shows that defendant was in possession.—*Blackwood v. Van Vleet, 11 Mich., 252 ; Stockton et al. v. Williams et al., 1 Doug. (Mich), ·546.*

Though in no way essential to the decision of this case, it may yet be well to state that complainant's apprehensions of irreparable damage do not seem to us to rest upon very strong grounds of probability, when it is ·considered that the very object and business of the defendant under its charter—which they had hitherto carried on, and which, by the bill, it appears they were preparing to continue—consisted in running, rafting and booming logs and delivering them at the various mills along the river, which business they would doubtless, for their own interest, seek to do for complainants and which they probably could not under their charter, refuse to do for a fair compensation, if requested.

The decree of the court below dismissing the bill must be affirmed, with costs of both courts.

The other Justices concurred.