TITLE GUARANTY & SURETY CO. *v.* ÆTNA INDEMNITY CO.

1. EQUITY—JURISDICTION TO RESTRAIN ACTION AT LAW.

    In a suit to enjoin an action at law, the complainant's bill averred that one Frank P. Glazier was elected treasurer of the State of Michigan for the years 1905 and 1906, for which term defendant surety companies executed his official bonds; that upon his re-election to office complainant became the treasurer's official surety for one year by a separate instrument; that the treasurer settled his accounts as treasurer for his first term giving a receipt in usual form to himself for all balances due the State, but having defaulted in the use of State funds during 1907, resigned; that the attorney general brought an action at law against complainant on its bond, and that an accounting is necessary as to the other defendants, and that complainant has equitable defenses which could not be made in an action at law. *Held,* that the averments are insufficient to confer jurisdiction upon the court of equity.

2. SAME.

    Since the bond given by complainant as surety was for the first year of the treasurer's second term, it is liable only for a defalcation occurring during that term,—an issue triable on the law side of the court.

3. SAME—ACCOUNTING.

That the accounts of the State and its depositories are to be examined in determining defendant's liability is not a ground of equitable cognizance without a showing of contractual or other relations between the sureties authorizing an accounting.

4. SAME — SETTING ASIDE INSTRUMENTS AND TRANSACTIONS — RECEIPT AS EVIDENCE.

There could be no occasion for equitable interference to set aside the receipt given by the treasurer to himself, because it is merely evidence that could be contradicted or explained by parol testimony in an action at law.

5. SAME—MULTIPLICITY OF ACTIONS—PRINCIPAL AND SURETY.

Nor does such a bill lie to avoid a multiplicity of suits between the sureties whose liability is of a distinct or severable nature arising upon separate instruments covering different periods of time.

Appeal from Ingham; Wiest, J. Submitted November 6, 1911. (Docket No. 50.) Decided December 8, 1911.

Bill by the Title Guaranty & Surety Company against the State of Michigan, the Ætna Indemnity Company, and others, to restrain an action at law, for an accounting and other relief. From a decree overruling the demurrer of defendant the Ætna Indemnity Company, said defendant appeals. Reversed and bill dismissed as to appellant.

*Luman W. Goodenough* (*Rollin H. Person*, of counsel), for complainant.

*Moore & Moore*, for defendant Ætna Indemnity Co.

STONE, J. This is an appeal by defendant Ætna Indemnity Company from an order overruling a demurrer to the bill of complaint.

In November, 1904, Frank P. Glazier was elected State treasurer of this State for the calendar years 1905–1906. The defendants Ætna Indemnity Company, Fidelity & Deposit Company, Federal Union Surety Company,

Bankers' Surety Company, and Empire State Surety Company signed his official bonds for those two years, which constituted his first term. In 1906 Mr. Glazier was elected a second time to serve during the calendar years 1907–1908. The complainant, the Title Guaranty & Surety Company, signed for him another entirely distinct and separate official bond, by which the complainant guaranteed the integrity of Mr. Glazier for the year 1907, which constituted by his re-election the first year of his second term. Mr. Glazier, at the close of his first term, seems to have settled all of his accounts as first term treasurer of the State, and after giving the last-described bond, and entering upon the duties of that term, he receipted in the usual form to the preceding treasurer (himself) for all balances, thus, in form at least, closing his treasurership for the first term. Mr. Glazier, during each term, deposited large amounts of money, at different times, in the Chelsea Savings Bank, and this bank, on December 5, 1907, was declared insolvent by the State bank examiner, and the circuit court for the county of Washtenaw, in chancery, on application of said bank examiner, put the affairs of the bank in charge of the defendant W. W. Wedemeyer, as receiver, who is still acting. It was discovered that Mr. Glazier was a defaulter, and, on January 23, 1908, he resigned, and his successor was appointed. The attorney general brought suit in the Ingham county circuit court, in the name of the State, against complainant on its official bond, and the case was about to come up for trial.

At this stage, the complainant filed its bill of complaint in the circuit court for the county of Ingham, in chancery, stating the foregoing facts, and alleging that a large part of the defalcation occurred during the first term; that the sureties for the first term were liable for so much of the defalcation as occurred during that term. It is also alleged that the State has a claim against the other surety defendants for a part of Mr. Glazier's shortage.

Equitable jurisdiction is claimed on the ground:

(*a*) That an accounting is necessary between the sureties for the first term and the second term; (*b*) that complainant has equitable defenses which it cannot make in a suit at law; and (*c*) because if equity does not take jurisdiction complainant will be compelled to bring several suits to enforce its equitable rights against the sureties for the first term.

The relief asked for is (1) that the State be enjoined temporarily and permanently from prosecuting the suit at law which it has already instituted against the complainant; and (2) that the State and other defendants may be brought into court, compelled to come to an accounting, and be bound by the decree.

To this bill of complaint, the attorney general filed an answer for the State. Defendant Wedemeyer, receiver, and the Fidelity & Deposit Company each filed a separate answer. The other surety companies have demurred. The demurrers were argued together and overruled by the circuit judge. A decree having been entered, overruling the demurrer, the defendant Ætna Indemnity Company alone has appealed.

By its demurrer, the appellant claims the following propositions:

"(1) The State is a necessary party.

"(2) The State cannot be sued without its consent.

"(3) The legislature alone has the power to consent for the State, and it has not consented.

"(4) The attorney general has no power to consent for the State, and his appearance and answer conferred no jurisdiction upon the court.

"(5) The bill is multifarious.

"(6) Equity has no jurisdiction."

Passing by the first five propositions, we shall first consider the sixth proposition, and inquire whether equity has jurisdiction in the case. It is very clear to us that the State cannot recover against the complainant, except for a defalcation occurring during the first year of the second term. It is equally clear that the State can recover against the surety defendants only for a defalcation

occurring during the first term. It seems to us that these are separate, distinct, and independent legal issues, to be tried out at law. The claims set up in the bill, in our judgment, have no equitable nature; they are proper foundations for actions at law, and nothing else. The remedy sought in the bill is a legal remedy. The bill calls for a money judgment, and does not show that the equity powers of the court are necessary in supporting it. The mere fact, if it be a fact, that the accounts of the bank and the State are to be examined does not give equity jurisdiction.

Counsel for the complainant admit that the sureties for the first term are not liable for the defalcations in the second term, and *vice versa,* and they cite the following authorities in support of the position: *Township of Paw Paw* v. *Eggleston,* 25 Mich. 36; *City of Detroit* v. *Weber,* 29 Mich. 24; *City of Grand Haven* v. *Fidelity & Guaranty Co.,* 128 Mich. 106 (87 N. W. 104, 92 Am. St. Rep. 446). Counsel for complainant say:

"This is a bill for an accounting by the surety for the second term against the State, the sureties on the bond for the first term, the receiver of the bank, whose books alone will show with accuracy the transaction out of which the loss of the State arose, a bill by which complainant seeks to avoid the effect of the receipt, given by the State treasurer to himself at the beginning of his second term, which it alleges to have been false in fact, and a fraud, and the existence of which is the main, if not the only, ground for the State charging complainant with any considerable part of its loss; a bill which sets out that the transactions necessary to be examined extend over a long period, and can best be investigated in a court of equity, and which seeks to have determined the amount equitably due to the State from it and from the sureties upon the official bond for the first term."

Our reply to this is that there are no contractual relations, mutual dealings, or other condition which would authorize an accounting between them. The two issues are separate, distinct, and independent, and cannot be joined in one suit.

Counsel for complainant also claim that the bill is filed to avoid the effect of the receipt given by the State treasurer to himself at the beginning of his second term. This receipt is not set forth; the bill does not show for what amount it was given, nor for what amount it should have been given; nor does the bill ask any relief for or on account of the receipt. It does not ask that it be declared void, or canceled, or reformed. The prayer of the bill makes no reference whatever to the receipt, and asks no relief in that regard. We do not understand why there is any occasion for equitable interference because of the receipt. The receipt was not given by complainant, and its effect can as well be determined at law as in equity. While the receipt, unexplained, might be evidence of the amount received, it is mere evidence, and can be contradicted or explained by parol testimony. *Johnson* v. *Insurance Co.*, 39 Mich. 33; *Vyne* v. *Glenn*, 41 Mich. 112 (1 N. W. 997); *Powell* v. *Powell*, 52 Mich. 432 (18 N. W. 203); *Hart* v. *Gould*, 62 Mich. 262 (28 N. W. 831).

In 2 Brandt on Suretyship and Guaranty, § 799, it is said:

" The entries made by an officer in public books while in discharge of his duty, or returns made by him to the public authorities, are generally *prima facie* but not conclusive evidence against his sureties of the facts thus stated. The returns of a receiver of the government to the treasury department, showing the receipt of money by him, were held to be *prima facie* but not conclusive evidence in an action by the government against the sureties on his bond. The court said the sureties might show that he received no money, or less than he reported. The accounts rendered to the department of money received, properly authenticated, are evidence, in the first instance, of the indebtedness of the officer against the sureties, but subject to explanation and contradiction. They are responsible for all the public moneys which were in his hands at the date of the bond, or that may have come into them afterwards, and not properly accounted for; but not for moneys which the officer may choose falsely to admit in his hands in his accounts with the government. Entries in the books of a State treasurer, showing the amount which ought to be in the State treasury, are not conclusive

evidence against his sureties that such amount was in the treasury."

Many cases are cited in the notes. These explanatory facts are all admissible in a suit at law.

Counsel claim that the bill would save a series of suits by the State; but it is very clear to us that complainant has to defend its own liability only. It is not concerned with any other suit.

"The suggestion that a suit in equity will save a multiplicity of suits has no force. It only adds one to the suit before instituted." *Beecher* v. *Mead*, 49 Mich. 162 (13 N. W. 498).

It is also urged that the bill will avoid suits between the different surety companies for an accounting; but we think it is a complete answer that there can be no accounting between the different sets of surety companies. Each company must stand upon its own footing. Counsel also say that complainant wishes to investigate in one suit the general course of misconduct of both terms. But it is very clear that the surety defendants are not interested in anything done during the second term. Nor is complainant liable for any default in the first term. Litigants ought not to be compelled to come into court and litigate matters with which they are not concerned.

In the instant case, the claim of the State is against different parties, on different contracts, made at different times, and for different amounts and liabilities. The sole question in each case is the liability of the surety on an official bond for a specified time, and we think that each surety company is entitled to defend in a suit at law, and to a trial by jury. The views above expressed finds support in the following cases in this court: *Bonebright* v. *Pease*, 3 Mich. 318; *Bennett* v. *Nichols*, 12 Mich. 21; *Torrent* v. *Booming Co.*, 22 Mich. 354; *City of Detroit* v. *Board of Public Works*, 23 Mich. 546; *Cole* v. *McFall*, 48 Mich. 227 (12 N. W. 166); *Pittman* v. *Burr*, 79 Mich. 539 (44 N. W. 951); *Detroit Trust Co.* v. *Old*

*Nat. Bank*, 155 Mich. 61 (118 N. W. 729); *Pulezer* v. *Kucharzyk*, 116 Mich. 92 (74 N. W. 304); *Mack* v. *Village of Frankfort*, 123 Mich. 421 (82 N. W. 209); *Warren* v. *Warren*, 151 Mich. 95 (114 N. W. 867); *Harris* v. *Bow*, 156 Mich. 28 (120 N. W. 17); *Gault* v. *Gault*, 158 Mich. 303 (122 N. W. 639).

We have examined the numerous cases in this State cited by complainant's counsel. They are cases where the relief in an action at law was both difficult and inadequate, and are readily distinguishable from the cases above cited.

We conclude that the decree of the circuit court should be reversed, and the bill dismissed as to the appellant, with costs.

OSTRANDER, C. J., and STEERE, MOORE, and BROOKE, JJ., concurred.