## MICHIGAN SUGAR CO. v. MOFFETT.

1. INTERPLEADER—EQUITY—JURISDICTION—ACTION AT LAW.
   While it may be questioned if an affidavit of the assignee of a claim can be considered in support of a demurrer to complainant's bill of interpleader, as establishing the fact that an action at law had been instituted with the consent of the assignee upon complainant's alleged contract to take a crop of sugar beets, to be grown by the defendant assignor, the trial court committed no error in finding that the suit was commenced on the law side of the court with the consent of the assignee, where complainant's bill of interpleader joining assignor and assignee and seeking to restrain the action, did not aver that the action at law was not commenced for the benefit of or under the direction of such assignee.

2. ASSIGNMENT—CONTRACT—PARTIES.
   At common law the assignment of a demand did not entitle the assignee to bring an action in his own name.

3. SAME—STATUTES—ACTIONS.
   3 Comp. Laws, § 10054 (5 How. Stat. [2d Ed.] § 12704), permitting the assignee of a claim to sue in his own

name is not mandatory, and leaves the party to bring the action in his own name, if he so elects.

4. SAME—EQUITY—PLEADING—INJUNCTION.

The trial court did not commit error in sustaining a demurrer to the bill, which could not be sustained as a bill of interpleader, lacking many of the essentials of such an equitable pleading, and claiming no relief of a final character except a money judgment and an injunction restraining the action at law for breach of contract.

5. SAME—FORECLOSURE—LIEN.

Neither could the complaint be sustained as a foreclosure bill as affecting the beets covered by the contract, which had all been disposed of, or had ceased to exist so that foreclosure would be useless, and there was no property on which a lien might operate.

6. SAME—MULTIPLICITY OF SUITS.

The fact that other contracts of a like nature between complainant and other beet growers might be concerned or affected by the result did not confer jurisdiction upon the court of equity, or sustain the claim that it was filed to prevent multiplicity of actions.

Appeal from Gratiot; Searl, J. Submitted November 18, 1914. (Docket No. 99.) Decided December 19, 1914.

Bill by the Michigan Sugar Company against Edmond Moffett and Luke B. Sawyer for an injunction and other equitable relief. From an order sustaining a demurrer to the bill of complaint, complainant appeals. Affirmed.

*Warren, Cady, Ladd & Hill* and *William A. Bahlke,* for appellant.

*Edwin H. Lyon* and *John W. Myers,* for appellees.

STONE, J. The bill of complaint in this cause was filed to restrain a suit at law, and for further specific relief as hereinafter indicated. The defendants de-

murred. Upon the hearing of an application for an injunction, the same was denied. Afterwards the demurrer was sustained and the bill of complaint dismissed. The complainant has appealed.

The bill alleges that the complainant (hereinafter called the company) is a corporation organized under the laws of this State, and is engaged in the business of manufacturing refined sugar from sugar beets; that one of its plants for this purpose is located at Alma, Mich., and is known as the "Alma Plant;" that it obtains its supply of sugar beets by contracts with farmers in the neighboring counties; that for the purpose of encouraging and assisting men without means to plant, cultivate, and harvest sugar beets, it has in certain cases rented lands in its own name for such purpose, and sublet such lands to such persons, advancing money to such growers, for the production and delivery of the crop; that with this object in view, the company entered into a written lease with one Charles Johnson for 60 acres of land, on August 27, 1910, for the term of two years from and after January 1, 1911, a copy of which is made a part of such bill, and is referred to as "Exhibit A." It is averred that on the same day the company entered into a written contract with the defendant Edmond Moffett to grow sugar beets upon the same lands rented from Johnson, and to deliver such beets at a stated price to the company at the Alma plant "during the year commencing with the spring of 1911." Said agreement is referred to as "Exhibit B," and contained the following provision:

"Said beets shall be harvested and loaded by the grower for the company on cars, or delivered at factory sheds, at such times and in such quantities as may be directed by the company, allowing each grower his *pro rata* amount. The company will not be able to receive or pay for beets which are rotten, or otherwise unfit, or undesirable for making sugar."

This contract ·bears the following date: "Date 1/27/1911." The bill avers that the date was an error, and should have been, "August 27, 1910." The bill further alleges that on the same day, to wit, August 27, 1910, the company and said ·defendant Moffett made and entered into a second contract, in writing, referred to as "Exhibit C," whereby the said defendant assumed the lease between the company and . Charles Johnson, and the company agreed therein—

"To advance all necessary money to Mr. Moffett to pay off his help, but the aforesaid Edmond Moffett agrees to do all the work he can himself, said money so advanced to be paid back to the aforesaid sugar company with interest, according to certain notes used by the aforesaid sugar company; the aforesaid Edmond Moffett agrees to make out a statement of the actual expense, and turn it over to the company or its agent whenever he wishes money advanced to pay off help; all moneys so advanced shall be taken out of the proceeds of the crops grown if the proceeds come to enough, otherwise Mr. Moffett is liable the same as any other debt."

It is averred that under the said contracts the defendant Moffett proceeded to grow upon the lands in question 60 acres of sugar beets for the company; that the company, under the last-named contract, to assist said defendant to produce such crop, did, from time to time, advance to him large sums of money; that it did also advance beet seed to said defendant and paid freight charges for the delivery of such beets to its Alma plant, and that the amount of such advances exceeded the sum of $2,000. It is further averred that at the time such cash advances were made, from time to time, the said defendant gave to the company security notes or contracts, of which the following is a specimen:

"350.00                                    No. 5600.
        "ASHLEY, MICHIGAN, January 17, 1912.
"MICHIGAN SUGAR COMPANY (Alma Plant).
"*Gentlemen:*

"I hereby make application for a loan of three hundred and fifty dollars, to use in growing and harvesting my crop of sugar beets grown for you under my contract No. 2822, for the season 1911.

"I hereby acknowledge the receipt of said sum of $350.00 from the Michigan Sugar Company, and agree to pay the same to the said company, or its order, on demand after Feby. 1, 1912, with interest at the rate of 6% per annum.

"As security for the repayment of said loan as aforesaid, I hereby sell, transfer and set over unto the said Michigan Sugar Company, all of the sugar beets raised during the year 1911 upon the lands mentioned in said contract, and authorize the said Michigan Sugar Company to deduct the amount above named, with interest thereon, from the first money due or payable to me; provided, however, in case I neglect to cultivate, harvest or deliver the crop, in accordance with said contract, said company is authorized to do so, and to charge the expense thereof to me, and to first deduct the amount thereof from the first moneys due or owing me.

                        "EDMOND MOFFETT, Grower."

It is further averred that said defendant, in pursuance of said contract relations, delivered to said company, beginning on September 20, 1911, and ending on February 8, 1912, about 130 wagonloads of sugar beets, grown upon the land described in said contract, which beets were properly tared and tested by complainant in the due course of its business, and which several net sums of money for said loads of beets said defendant is entitled to have applied in payment of said several sums of money so advanced by complainant to said defendant. It is further averred that said company, at its Alma plant, had made and entered into 2,075 beet contracts with farmers, which

183 Mich.—38.

were in existence and force during the season of 1911. The bill further avers that on November 26, 1911, the defendant Moffett made and executed an assignment of his contract with said company, to the defendant Luke B. Sawyer, and authorized the said Sawyer to collect and receipt for all amounts due defendant Moffett thereon, that on November 30, 1911, the defendant Sawyer caused said assignment to be filed with complainant for the purpose of giving the latter notice of his right to receive all payments due upon said contract, and that defendant Sawyer made claim to the full amount of money that might become a credit in favor of defendant Moffett under his contract. It is further averred that on June 8, 1913, the defendant Moffett began a suit at law against complainant, in the circuit court for the county of Gratiot by declaration, counting upon a breach of the contract known as "Exhibit B," in this: That the company refused to receive the beets grown by said Moffett—

"In season, and within a reasonable time after the same were harvested and ready for delivery said defendant refused to receive the said beets, or any part thereof, except that it received a part of said beets, before and after that time, and wrongfully refused to receive the remainder and did not pay said plaintiff for those which it received. And the plaintiff further avers that by reason of the premises and the failure, neglect, and refusal of said defendant to receive said beets in due season and in accordance with the terms and provisions of said contract, and when so tendered and offered to it, as aforesaid, by said plaintiff, the said beets became and were injured, frozen, spoiled, and worthless."

Said declaration also contained the common counts in assumpsit. The plaintiff in that suit filed a bill of particulars, claiming that the company was indebted to him for 600 tons of sugar beets raised by him in the campaign of 1911, and tendered to said company

and refused, which at the contract price amounted to a large sum, to wit, $4,400. Also for 200 tons of beets raised, grown, harvested, and delivered under the terms of said agreement, for which the company did not pay said plaintiff, $1,100. Also for damages because of the failure, neglect, and refusal of the company to abide, perform, and fulfill the terms of said agreement, $10,000.

To this declaration the company pleaded the general issue, and gave notice of set-off, with a bill of particulars of its advances and payments, also of payment, satisfaction, and discharge, of the authorized deduction of advances with interest, as evidenced by said writing and notes; also by way of recoupment that said plaintiff—

"Did not with due care, plant, cultivate, harvest and deliver during the year commencing with the spring of 1911, sixty acres of sugar beets on said lands, but on the contrary, in violation of said contract in that regard, permitted said beets, by exposing them to the elements, to become frozen, rotten, and worthless for use by the defendant in the manufacture of sugar therefrom, for which purpose said plaintiff knowingly produced said crop of sugar beets for the said defendant, by reason whereof the said defendant avers that it suffered great damage in this: That it has not been paid for said beet seed, and has not been paid for said several sums of money and advances and items so made, as set forth as aforesaid, as of dates previous to March 1, 1912, to its damage of $2,000. And that the said defendant has suffered damage in the loss of profits which it would have enjoyed and received had said beets been delivered to it as said plaintiff had contracted, in this: That it would have made and received, from its use of said beets for said purpose, the sum of a net profit of $2 per ton of beets to its damage, to wit, $1,000, and to its total damage of nonperformance of said contract of $3,000, which damage said defendant will recoup as against all damages, if any, which plaintiff may have sustained in the

premises, and have the balance certified as a judgment against said plaintiff, in favor of said defendant."

Counsel for complainant state in their brief that this bill is filed in part as a bill of interpleader, in part as a foreclosure bill, also to prevent a multiplicity of suits, and for an accounting, asserting that:

"The whole question of default by either party in accepting or delivering beets under these contracts, involves the delivery of beets on 2,075 growers' contracts."

They also assert that the company's defenses are not available in the action at law.

To this bill of complaint the defendants demurred for the following reasons:

"(1) It appears by said bill that a court of competent jurisdiction, to wit, the circuit court for the county of Gratiot, has become possessed of a case involving a legal controversy between said complainant and said defendant Edmond Moffett, and, it not appearing by said bill that that action is not brought by, or in behalf of said defendant Luke B. Sawyer in the name of Edmond Moffett as his assignor, the authority of that law court continues, subject to the appellate authority, until the matter is finally and completely disposed of, and no court of co-ordinate authority is at liberty to interfere with its action.

"(2) Complainant has a full and adequate remedy at law, if it has any defense to said action.

"(3) There is no equity in said bill of complaint.

"(4) The two contracts mentioned and referred to in said bill of complaint are either a part and parcel of one contract, or they are not; if they are, complainant can make its defense at law; if they are not, equity has no jurisdiction to ascertain and apply any claim of complainant against said defendant Edmond Moffett on account of the other contract, not mentioned and declared upon in the declaration in said action at law until said claim is litigated at law.

"(5) It does not appear that complainant had or has any rights under, or claimed to arise on account

·of, either or both of the contracts mentioned and referred to in said bill of complaint as 'Exhibit B' and 'Exhibit C,' which cannot be fully, fairly, and adequately considered and litigated in said action at law.

"(6) It does not appear that there is either any danger or any possibility of said complainant being put at a disadvantage, or in any other manner damnified by reason of the assignment from said defendant Edmond Moffett to said defendant Luke B. Sawyer, if it is required to make its defense in such action at law, and is not permitted to enjoin and restrain the prosecution of such action at law."

In sustaining the demurrer the learned circuit judge, in his opinion, said:

"The contention of complainant that it may be liable to Sawyer under the assignment need not be discussed, as Sawyer has filed an affidavit herein expressly stating that the suit on the law side of the court was commenced with his consent and under a contract between himself and Moffett, a copy of which is attached to his affidavit. Hence in any event Sawyer can make no claim in any other suit against the sugar company.

"Complainant claims that the controversy will require an accounting, and that this can be had in a court of equity. After a careful examination of the cases cited by the solicitors for both parties, I have reached the conclusion that if the case requires an accounting, it can be had at law as well as in equity. Certainly the case here is no stronger than the one in the cited case below, where our court held that the mere fact that the accounts of the State for a period of years with those of a bank are to be examined does not give equity jurisdiction. *Title Guaranty & Surety Co.* v. *Indemnity Co.*, 167 Mich. 535 [133 N. W. 515].

"It is next contended that defendant in the law case cannot set off the amounts advanced by it to plaintiff. That action is in assumpsit which is an equitable action and the advancements can be treated as payments, and under well-settled rules plaintiff then can recover no more than is equitably due him.

"If complainant is right in its assertion that there

was but one contract, and that plaintiff has sued only on a part of it, that defense can be made at law. If the contracts are separate ones, plaintiff can be compelled to litigate both at this time.

"If, as claimed by plaintiff in the law case, the contract is to be construed like ordinary contracts, then the question to be decided is whether there has been a breach on the part of defendant sugar company and the amount of plaintiff's damages in case he shows that he has fulfilled his contract. And upon these questions he is entitled to the verdict of the jury.

"On the other hand, if he contracted with reference to the usage claimed by the sugar company, and it has the right to show this usage and its custom in accepting a *pro rata* share under each contract, this can be shown as well at law as in equity. There is no rule that, because much time will be taken in the taking of evidence to establish the rights of the parties, therefore equity courts must take jurisdiction. It is the nature and not the extent of the accounting that determines this question. In many cases juries sit for weeks and months listening to testimony in order to arrive at a proper verdict; and, while it may be more expensive to the taxpayers, it usually is not more so to the litigants, and at any rate presents no reason why the case should not be tried on the law side.

"These are the material questions involved, and I am unable to reach the conclusion that complainant has made or stated such a case as entitles it to relief. The grounds of the demurrer are therefore sustained, and an order may be entered accordingly and the bill dismissed."

While it may be questioned whether the circuit judge could consider the affidavit of defendant Sawyer in support of the demurrer, yet, it not being claimed by the bill of complaint that the suit at law was not brought by or on behalf of said defendant Sawyer, we think the circuit judge reached the correct conclusion. The assignment of a non-negotiable demand does not, at common law, entitle the assignee to pursue remedies in his own name, upon the con-

tract. The statute (section 10054, 3 Comp. Laws, 5 How. Stat. [2d Ed.] § 12704) is only permissive in its provisions, and the assignee is still at liberty to sue in the name of the contracting party. *Sisson* v. *Railroad Co.,* 14 Mich. 489-496 (90 Am. Dec. 252) ; *McRoberts* v. *Lyon,* 79 Mich. 25-31 (44 N. W. 160).

The bill of complaint cannot be treated as a bill of interpleader. It lacks many of the essentials of such a bill. Neither can it be treated as a foreclosure bill, for it appears by the bill that there are no beets now in existence upon which to foreclose any lien, and such foreclosure would be fruitless. It is contended on behalf of complainant that a proper disposition of the issues raised involves the delivery of beets on 2,075 growers' contracts. These growers are not before the court, and the rights of the parties to this suit can as well be disposed of in the suit at law as in equity. We have fully stated the issues in the law case, to show that the rights of the parties can be fully litigated in that suit. There is no claim in the bill that complainant is entitled to the cancellation or surrender of any contract, or that it is entitled to any relief, other than a money judgment. We are of opinion that it has a full and adequate remedy at law in the law case now pending, and that the trial court properly sustained the demurrer.

The decree below is affirmed, with costs to the defendants.

MCALVAY, C. J., and BROOKE, KUHN, OSTRANDER, BIRD, MOORE, and STEERE, JJ., concurred.